# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL H. PARTON, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-10-294-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Daniel H. Parton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born October 9, 1960, and was forty-seven years old at the time of the administrative hearing (Tr. 31, 99). He completed high school (Tr. 31-32, 135), and has worked as automobile body repairer/combination repairer/painting, roofer, and owner/operator automobile body repair chief (Tr. 25, 49). The claimant alleges inability to work since June 1, 2004, due to back and leg complications (Tr. 99, 130).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on April 24, 2006. His application was denied. ALJ Tela L. Gatewood conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated September 10, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found the claimant had the residual functional capacity (RFC) to perform light work, *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, and stand/walk for an hour at a time up to six hours in an eight-hour workday, but stoop, kneel, crouch, or crawl only occasionally. The ALJ concluded that while the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work that he could perform, *e. g.*, automobile repair estimator, automobile accessory sale representative, and order clerk. (Tr. 27).

## Review

The claimant contends that the ALJ erred by failing to perform a proper analysis of his credibility. The Court agrees, and the Commissioner's decision must accordingly be reversed.

The ALJ found that the claimant had the severe impairments of disc bulging and stenosis of the cervical and lumbar spine, spondylolisthesis of the lumbar spine, and laceration of finger with complaints of left shoulder pain and left extremity paresthesias. (Tr. 22). In 2005, an MRI of the claimant's lumbar spine revealed degenerative disc changes at the L4-5 and L5-S1 levels, mild central disc bulge without associated stenosis or foramenal narrowing at L4-5, and a left posterior disc bulge/osteophyte formation resulting in moderate to severe narrowing of the left neural foramen at L5-S1. (Tr. 238). Another MRI in 2007 revealed similar results: Grade I subluxation of L5 on S1 without pars defect, degenerative disc disease and facet joint hypertrophy at L5-S1 resulting in mild bilateral recess stenosis without spinal stenosis, and mild disc bulge at L4-5 with facet joint hypertrophy resulting in mild lateral recess stenosis and borderline spinal stenosis. (Tr. 244). A November 2007 MRI of the claimant's cervical spine revealed disc bulges at C2-3, C3-4, C4-5, C5-6, and C6-7. (Tr. 261). Notes from a December 2007 visit to Chickasha Health Clinic in Tishomingo, Oklahoma, reflect that an MRI revealed significant abnormalities causing intermittent hypesthesias on his entire right arm, as well as the medial surfaces of his arm and hand. (Tr. 266).

Dr. Charles Engles treated the claimant on referral from the Tishomingo clinic. He stated that the claimant's back problems were "easily explained in that he has a bona

fide structural problem with degenerative L5-S1 spondylolisthesis producing his back pain, compression of his left L5 nerve root and left leg pain. (Tr. 273). Dr. Engles recommended epidural steroid injections, but stated that "the only real way to fix this is to pursue surgery, although injections may give[] him some temporary benefits." (Tr. 273). A December 2007 review of the claimant's MRI scans and clinical findings revealed nerve defects, and Dr. Engles again recommended a trial of two lumbar epidural steroid injections, as well as nerve conduction velocity for his arms. (Tr. 270). Claimant underwent an epidural steroid injection in March 2008. (Tr. 331).

At the administrative hearing, the claimant testified that he is currently enrolled in college classes, that he lives by himself on 40 acres of land, and that he takes care of his meals, his pet, and his own laundry. (Tr. 39-40). As to his college classes, he testified that he sometimes attends classes, but takes some classes on-line; that he struggles to operate a computer keyboard and has to go very slowly; that he is usually unable to sit through an entire class, but that his professors usually allow him to stand up and stretch in the back, or he sometimes leaves class altogether. Additionally, sometimes he misses class and has to email with his professor to make up the work. (Tr. 38-39, 43-45). As to his physical limitations, he testified that he has constant pain in his lower back, that he can only stand for thirty to forty minutes at a time, that he does not have good range of motion, that he cannot sit for more than an hour without having to stand up, and that sometimes the pain in his leg causes him to limp. (Tr. 41-42). He further testified that he has problems with his neck and left shoulder, and that he has a limited range of motion in both. At the hearing, the claimant was wearing a brace on his left hand and wrist, to help

with numbness. Additionally, he has had problems with gripping objects, which caused him to cut off the end of one of his fingers. (Tr. 42-44).

The ALJ summarized the claimant's hearing testimony, including his limited daily activities. The ALJ made an initial credibility finding that the claimant's statements were not credible to the extent they were inconsistent with her RFC assessment, but added that "[t]he claimant's activities are not those of an individual totally unable to work. He did not appear especially uncomfortable at the hearing. His going to school indicated that he could be trained for lighter work and for work requiring upper extremity use." (Tr. 25). The ALJ also observed that the claimant failed to obtain recommended epidural steroid injections or get a second opinion, which she felt diminished the claimant's credibility as to the degree to which his impairments were disabling. (Tr. 25).

A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), quoting Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *4 (July 2, 1996). The ALJ's credibility determination failed to meet these standards.

First, the ALJ listed the credibility factors set forth in Social Security Ruling 96-7p, 20 C.F.R. §§ 404.1529, 416.929, and *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) but failed to apply them to the evidence.[2] She was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" was clearly insufficient. *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. The ALJ compounded this error by noting the claimant failed to follow through with a recommended course of treatment, specifically, epidural steroid injections, when the record clearly reflected otherwise, *i. e.*, the claimant received at least one epidural steroid injection. (Tr. 331).

---

[2] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at 3, 1996 WL 374186 (1996).

Finally, the ALJ's statement that the claimant's statements as to his impairments were not credible in light of his own description of his activities and lifestyle appear to be a boilerplate conclusion because the ALJ did not link her conclusion to any evidence. In fact, the claimant's testimony was that he is seriously limited in what he can do and that he has to be careful to not overexert himself, so much that he is often unable to attend one entire college class in a day. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'"), *quoting Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).

Because the ALJ failed to properly analyze the claimant's credibility, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**DATED** this 28th day of September, 2011.

                                            Steven P. Shreder
                                            United States Magistrate Judge
                                            Eastern District of Oklahoma